IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| JOHN A. CUMBEE, ) | |
| ) | |
| Plaintiff, ) | |
| ) | Case No. 12 C 09921 |
| v. ) | |
| ) | Judge John J. Tharp, Jr. |
| MARCUS HARDY, ) | |
| ) | |
| Defendants. ) | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff John Cumbee is an inmate at Stateville Correctional Center. In November 2012 he sued the then-warden, Marcus Hardy, for his refusal to allow Cumbee to return to his work assignment in the inmate kitchen after Cumbee was the subject of ultimately unsubstantiated allegations of fighting. Cumbee alleges that this was retaliation for his recent filing of a lawsuit against Hardy, alleging deliberate indifference to a longstanding shoulder injury and a failure to provide Cumbee with adequate medical care. Cumbee seeks recovery under 42 U.S.C. § 1983 for the deprivation of his rights under the First Amendment and the Equal Protection Clause of the United States Constitution. Warden Hardy moves for summary judgment. Because Cumbee has sufficient evidence establishing that a genuine issue of material fact exists as to whether Cumbee was prevented from returning to his work assignment in retaliation for his filing of the first lawsuit, the motion is denied.

# BACKGROUND[1]

Cumbee filed a complaint against Hardy on June 1, 2011, asserting a claim under the Eighth Amendment for deliberate indifference to a serious medical need.[2] Hardy filed a Waiver of Service on July 7, 2011, which he personally signed, and he acknowledges receipt of the complaint in the first lawsuit (the "2011 Complaint").

Hardy, who worked with his attorneys to prepare his defense, moved to dismiss the 2011 Complaint on August 22, 2011. Two days later, on August 24, 2011, Cumbee injured himself—he cut his lip—while working in the inmate kitchen where he was assigned for his job. Cumbee says that he slipped and struck himself in the mouth with the roasting pan that he was carrying at the time. He did not report his injury to anyone at the prison.

But the prison's Internal Affairs Office received "an anonymous tip" that Cumbee was involved in a fight, and therefore opened an investigation. Under prison policy, on August 25, 2011, Cumbee was placed on "investigative status" and was moved into a segregated housing unit; this is distinct from being on "segregated status," which is a disciplinary measure. Cumbee was never placed on segregated status in connection with this incident. Cheri Hunter (then Cheri Tarr) of the prison's Internal Affairs office interviewed Cumbee and informed him that she had heard that he

---

[1] The facts are taken from the parties' N.D. Ill. Local Rule 56.1 Statements of Material Facts ("SOF"). Courts may decide a summary judgment motion based on a factual record established by the parties' Rule 56.1 Statements. *Koszola v. Bd. of Educ. of City of Chi.*, 385 F.3d 1104, 1109 (7th Cir. 2004). The parties each complied with Local Rule 56.1, by submitting their SOFs and appropriately responding to each other's.

[2] This case, No. 11 C 03511, remains pending against the former Stateville Medical Director after this Court denied the defendants' summary judgment motion on September 28, 2016. ECF No. 164.

been involved in a fight with another inmate worker in the kitchen, which Cumbee denied. He explained his accident and represented that he "got along great" with his co-worker. Hunter still suspected that Cumbee had been involved in a fight because he had not reported his injury (though there is no requirement under state law or prison rules that inmates do so). But there was no finding that any fight had occurred; and there is no evidence in the record that Internal Affairs conducted any witness interviews or spoke with anyone but Cumbee about the incident. So far as the record shows, the investigation was limited to the conversation with Cumbee. The allegation was not sustained (although this is not a finding that the incident did not happen), Cumbee was not disciplined, and he was released from segregation on September 12, 2011.

When Cumbee attempted to return to his work assignment in the kitchen the next day, however, he was not permitted to do so. Cumbee immediately wrote to the warden requesting that he be allowed to resume his work. Warden Hardy told Cumbee that he could not do so "at this time." Prior to responding, Hardy did not inquire within the prison whether there was any reason Cumbee should not be returned to work. In a second letter to Hardy on September 23, 2011, Cumbee reiterated that the alleged altercation did not occur and requested that Hardy reconsider his decision to prohibit Cumbee from returning to work. In his October 20, 2011, response letter, Hardy told Cumbee that although he did not receive any disciplinary action, he would not be returning to the kitchen because he had been placed under investigative status. Hardy testified, however, that although this was the only reason he gave, "[b]eing placed in investigative status isn't necessarily the reason why he wasn't sent back to dietary." Hardy Dep 66:16-18. Hardy did tell Cumbee that he

could apply for a different assignment. The only other position Cumbee sought, however, was not available at the time.

After an inmate at Stateville is investigated for misconduct, a committee votes on whether the inmate will be permitted to return his work assignment. An "assignment officer" will prepare a vote sheet and make the recommendation; that sheet goes to a programs counselor, an Internal Affairs representative, and an Intelligence representative; then it goes to the Assistant Warden of Programs, and then finally to the warden. The warden has the final say no matter what the committee's vote tally is. Hardy testified that he did not "typically" just agree with the vote sheet and instead made his own assessment. Hardy Dep. 66:16-18.

The vote sheet for Cumbee was circulated in October 2011, after Cumbee already had corresponded with Hardy and Hardy had denied his requests to return to work. Hardy Dep. 110: 20-21. One committee member, Ada Johnson (the prison's placement counselor), testified that she was "shocked" to see that she voted to keep Cumbee from work duty. As the rationale for her vote, Ms. Johnson had written: "Per IA inmate was involved in a fight in dietary with [another inmate]. Both inmates were placed in investigative status but was released w/o IDR being written. *I was informed by IA that per the Warden they weren't to be returned to dietary*." In other words, the warden told Internal Affairs before the votes were taken that Cumbee would not be returned to his kitchen duty, a fact that Hardy admitted in his deposition. Ms. Hunter generally agreed with this timeline. Hunter Dep. 47:12-13. Ms. Johnson testified that her vote "could have been" influenced by her knowledge that the warden already made a decision. Johnson Dep. 27:4; 28:3. The vote sheet was sent to Hardy with three votes (a bare majority) to reassign Cumbee, which were dated from October 25, 2011 to

4

November 5, 2011. Hardy decided to reassign Cumbee from the kitchen. Hardy attributed his position to "[t]he fact that there was an investigation; and, although there was no findings of violation, there was still some suspected activity that I did not feel comfortable assigning him back to the dietary department."

According to Hardy, his former supervisor informed him that he had been approved to return to his assignment in the kitchen by that Hardy has "overruled" the decision.[3] The next day, Cumbee again wrote to Hardy with regard to his refusal to allow Cumbee to return to his work assignment. On January 19, 2012, Hardy responded, stating without further explanation that the decision rendered on the Vote Sheet not to reassign Plaintiff to the kitchen would stand.

Cumbee was aware of other inmates who were permitted to return to work after being on investigative status or having been involved in fights or misconduct. Warden Hardy agreed that there "may have been" individuals "who were placed on investigative status in their work assignments for allegedly getting into fights or other physical altercations that after the investigation did not result in an IDR being issued who were returned to their work assignment." Hardy Dep. 95:5. There was not a uniform policy.

Warden Hardy left the prison on December 31, 2012. Shortly thereafter—on February 14, 2013—Cumbee was permitted to resume his job in the inmate kitchen.

---

[3] The defendant's hearsay objection to Cumbee's description of Tanner's statements is well-taken, but the description does provide context for the timing of his next appeal to Hardy. And, in any event, when the facts are viewed in the light most favorable to the plaintiff, this testimony is otherwise unnecessary to create a genuine issue of material fact as to whether Hardy orchestrated the vote to keep Cumbee out of the kitchen, so the hearsay objection is not pivotal.

**DISCUSSION**

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Jajeh v. County of Cook*, 678 F.3d 560, 566 (7th Cir. 2012). When addressing a motion for summary judgment, this Court construes the facts and makes all reasonable inferences in favor of the non-movant. *Id*. The Court's role is "to determine whether there is a genuine issue for trial." *Tolan v. Cotton*, 134 S. Ct. 1861, 1866 (2014). "The Court may not weigh conflicting evidence . . . or make credibility determinations." *Omnicare, Inc. v. UnitedHealth Grp., Inc.*, 629 F.3d 697, 704 (7th Cir. 2011); *see also Tolan*, 13 S. Ct. at 1866.

A party seeking summary judgment has the initial burden of showing that there is no genuine dispute and that he is entitled to judgment as a matter of law. *Carmichael v. Village of Palatine*, 605 F.3d 4s51, 460 (7th Cir. 2010). If the moving party demonstrates the absence of a disputed issue of material fact, "the burden shifts to the non-moving party to provide evidence of specific facts creating a genuine dispute." *Carroll v. Lynch*, 698 F.3d 561, 564 (7th Cir. 2012). The non-movant must go beyond the pleadings and "set forth specific facts showing that there is a genuine issue for trial." *Hannemann v. Southern Door County School Dist*., 673 F.3d 746, 751 (7th Cir. 2012). A genuine issue of material fact exists only if there is evidence "to permit a jury to return a verdict for" the non-moving party. *Egonmwan v. Cook County Sheriff's Dept.*, 602 F.3d 845, 849 (7th Cir. 2010).

To succeed on a retaliation claim, a prisoner must establish (1) that he engaged in activity protected by the First Amendment; (2) that he experienced an adverse action that would likely deter

First Amendment activity in the future; and (3) that the First Amendment activity was "at least a motivating factor" in the defendant's decision to take the retaliatory action. *See Gomez v. Randle*, 680 F.3d 859, 866 (7th Cir. 2012); *Watkins v. Kasper*, 599 F.3d 791, 794 (7th Cir. 2010); *Bridges v. Gilbert*, 557 F.3d 541, 551–52 (7th Cir. 2009).

The first element is established. As the defendant concedes (Mem. 5, ECF No. 74), Cumbee has the right under the First Amendment to file grievances and federal lawsuits. *Hasan v. U.S. Dep't of Labor*, 400 F.3d 1001, 1005 (7th Cir. 2005) (citing cases). Proving second element is also not foreclosed as a matter of law. The loss of over a year's wages, which is undisputedly what happened to Cumbee, is non-trivial and more than a *de minimis* consequence; it reasonably could deter a person of "ordinary firmness" from engaging in future protected activity. *See generally Surita v. Hyde*, 665 F.3d 860, 879 (7th Cir. 2011); *West v. Grams*, 607 F. App'x 561, 566 (7th Cir. 2015). Again, the defendant does not contest this conclusion for purposes of the summary-judgment motion. *See* Mem. 5, ECF No. 74.

The primary question, then, and the one on which the parties appropriately focus, is whether Cumbee has come up with sufficient admissible evidence that the 2011 Complaint was a motivating factor in Hardy's later decision to disallow his participation in his work assignment. Hardy contends that Cumbee has not adduced sufficient evidence to raise a genuine issue of material fact on this causation issue. He contends that temporal proximity is Cumbee's only evidence, and that as a matter of law, it is not enough. Cumbee responds that other circumstantial evidence permits the conclusion that there was a retaliatory motive.

Although there are not many facts other than the timing that could suggest a retaliatory motive, Cumbee just clears the hurdle for purposes of summary judgment. A reasonable jury could conclude that Hardy was motivated, at least in part, by a desire to punish Cumbee or send him a message about filing lawsuits against him.

First, there is the timing, Cumbee's strongest evidence. Hardy is correct that "suspicious timing" alone is generally insufficient to create a genuine issue of material fact. *See Hobbs v. City of Chicago*, 573 F.3d 454, 464 (7th Cir. 2009). But it is something. And here, the suspicious timing is not just that the decision to disallow Cumbee's work in the kitchen occurred shortly after Hardy got notice that Cumbee had sued him, and indeed, just after he finished assisting his attorneys in moving to dismiss the lawsuit. There is the further fact that Hardy's departure was followed swiftly by Cumbee's return to his prior duties. This permits a reasonable inference that Hardy was the sole impediment to Cumbee's participation in his work assignment and that there was not a security-related or disciplinary motive for keeping Cumbee away. Where the allegedly retaliatory conduct not only begins on the order of the defendant but also ends when the defendant no longer occupies a position of authority over the plaintiff, the inference of retaliation that may be drawn from "suspicious timing" is significantly stronger than in the typical case where there happens to be correlation only between the timing of protected activity and the allegedly retaliatory conduct.

Second, Cumbee has adduced some evidence that Hardy told the reassignment committee, via Internal Affairs, that Cumbee could not return to his job ***before*** the committee voted. Indeed, Hardy denied Cumbee's first request on September 15, 2011, just days after the investigation concluded and long before the committee voted. But Hardy admittedly did no investigating, did not

8

confirm that Cumbee had been involved in any fighting, and therefore, he arguably had no basis for concern about prison security or some other penological justification for depriving Cumbee of his ability to work in the prison on a prolonged basis. The most he could say was that he must have had some conversation with Internal Affairs, which he could not recall. Further, Cumbee provided testimony that other workers who had been involved in fights or who been on investigatory status were not deprived of their jobs afterward. He was not able to give specific details about these inmates, but neither did Hardy dispute Cumbee's testimony or provide other evidence that no other inmates in a similar position were allowed to return to work. Hardy testified that there was no policy against an inmate who had been on investigative status, but as to whom no allegations were sustained, returning to his work assignment. Hardy Dep. 37:24-38:3.

Given the chronology of events, the evidence that Hardy made his decision and influenced the reassignment committee in advance of the vote, and the lack of uniform policy requiring Hardy to keep Cumbee from returning to work, a jury could find based on the circumstantial evidence that Hardy dictated the prohibition of Cumbee's work assignment with a retaliatory motive. *See Mays v. Springborn*, 575 F.3d 643, 650 (7th Cir. 2009) ("Mays presented a chronology of events from which retaliation could be inferred"); *Chatman v. Pierce*, 583 F. App'x 548, 550 (7th Cir. 2014) (suspicious chronology with plaintiff's testimony of threats was sufficient to withstand summary judgment). In addition to the suspicious timing, Cumbee has adduced some evidence that Hardy, for all practical purposes the sole decision-maker, forced his reassignment despite having no knowledge of any fight, and with no reason (that he could articulate or support with any evidence) to discredit Hardy's denials that one occurred.

9

Finally, assuming a *prima facie* case of retaliation, Hardy has not established that even absent a retaliatory motive, he would have prohibited Cumbee from returning to work. Hardy could not be liable for retaliation if he would have taken the same action no matter what. *See Mays*, 575 F.3d at 650; *Spiegla v. Hull,* 371 F.3d 928, 943 (7th Cir. 2004). But although he argues that his decision was not "pretextual" (borrowing language from the plaintiff), *see* Reply 4-5, ECF No. 86, Hardy essentially admitted during his deposition the possibility that his stated reason for not reassigning Cumbee—the initiation of the IA investigation—might have been pretextual when he acknowledged that "[b]eing placed in investigative status isn't necessarily the reason why he wasn't sent back to dietary." He had no plausible alternative explanation, however, and though one could certainly be posited (*e.g.*, simply not believing that Cumbee wasn't involved in a fight despite the outcome of the investigation), it also could have been improper animus. That creates a dispute of fact. Hardy's evidence, moreover, does not establish that Cumbee's reassignment from the kitchen would have happened no matter what. The committee vote does not provide any cover because Hardy was the ultimate decisionmaker and, further, his position was apparently well-known before the vote was ever taken; it can be inferred that at least one of those voting would have changed her vote had Hardy not taken his reassignment stance before the vote was taken. Therefore, whether Cumbee would have lost his work assignment no matter what is a fact in dispute.

Hardy also argues that he is entitled to qualified immunity. "Qualified immunity shields government officials from liability under Section 1983 'for actions taken while performing discretionary functions, unless their conduct violates clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Gruenberg v. Gempeler*, 697 F.3d 573,

578 (7th Cir. 2012) (citation omitted). Courts must "consider whether the alleged facts demonstrate a constitutional violation, and whether the constitutional right was clearly established." *Id.*, citing *Pearson v. Callahan*, 555 U.S. 223, 232 (2009). "For a constitutional right to be clearly established, its contours must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Gruenberg*, 697 F.3d at 578, quoting *Estate of Escobedo v. Bender*, 600 F.3d 770, 779 (7th Cir. 2010).

Here, there is no question that it was clearly established in 2011 that it violates the First Amendment to retaliate against an inmate for filing a lawsuit. *See Babcock v. White*, 102 F.3d 267, 276 (7th Cir. 1996). The remaining facts on which the qualified immunity assessment rests—namely, whether Hardy's action was motivated in part by the filing of the first lawsuit against him—are disputed, and therefore the applicability of the qualified immunity defense cannot be determined on summary judgment. *Surita v. Hyde*, 665 F.3d 860, 878 (7th Cir. 2011).

\*    \*    \*

Because the facts must be viewed and reasonable inferences drawn in his favor, Cumbee, if narrowly, has raised a genuine issue of material fact regarding whether his prior lawsuit against Hardy was "a motivating factor" in Hardy's decision to ban him from his kitchen job. Therefore, the motion for summary judgment is denied.

Date: October 20, 2016

John J. Tharp, Jr.
United States District Judge